# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| **JAMIE T. JOHNSON,** | : | **Case No. 1:05 CV 101** |
|  | : |  |
| **Petitioner,** | : | **JUDGE KATHLEEN O'MALLEY** |
|  | : |  |
| **v.** | : |  |
|  | : |  |
| **UNITED STATES OF AMERICA,** | : | **ORDER** |
|  | : |  |
|  | : |  |
| **Respondent.** | : |  |

Before the Court is Jamie T. Johnson's ("Johnson" or "Petitioner") motion to vacate, set aside, or correct sentence filed pursuant to 28 U.S.C. § 2255 on January 20, 2005 (Doc. 1). Johnson argues that his defense counsel rendered constitutionally ineffective assistance by failing to follow instructions to file a notice of appeal following his guilty plea, judgment of guilt, and sentencing. On April 13, 2005, the District Judge referred the matter to Magistrate Judge William H. Baughman, Jr. for an evidentiary hearing (Doc. 11). On January 26, 2006, the Magistrate Judge filed a *Report and Recommendation* ("R&R") (Doc. 37) finding that Johnson had not received adequate representation by counsel at sentencing and, consequently, lost his opportunity to appeal. As such, the Magistrate recommended that this Court vacate Johnson's current sentence and re-sentence him so that he may proceed with an appeal.

The United States of America ("Respondent") timely filed an objection to the Magistrate's R&R on February 6, 2006 (Doc. 39), and Johnson filed a response to the Respondent's objection on February 17, 2006 (Doc. 40). Under 28 U.S.C. §636(b)(1)(C), this Court makes a *de novo*

determination of the portions of the Magistrate's report to which a party objects.  For the following reasons, the Court **REJECTS** the recommendation of the Magistrate Judge and **DENIES** Johnson's request for relief under § 2255.

## I. BACKGROUND

Pursuant to a written plea agreement entered into on November 4, 2003, Johnson pled guilty to conspiracy to possess and transfer counterfeit federal reserve notes in violation of 18 U.S.C. § 371, possession of counterfeit equipment in violation of 18 U.S.C. § 474, and possession of counterfeit reserve notes in violation of 18 U.S.C. § 474.[1]  On January 26, 2004, the Court held a sentencing hearing, at which time the Court accepted Johnson's guilty plea, entered judgment of guilt, and sentenced him to sixty months incarceration on each count to run concurrently, three years supervised release, and a $300.00 special assessment.

On January 20, 2005, Johnson filed a § 2255 motion to vacate, set aside, or correct his sentence.   Johnson presented the following four claims for relief: (1) trial counsel was constitutionally ineffective for not filing a notice of appeal when Petitioner asked to appeal his sentence as to the amount of time he received and the fact that he allegedly did not receive all of his jail time credit; (2) trial counsel was ineffective for not raising the issue of enhancements used to boost his sentence under Blakely v. Washington, 542 U.S. 296 (2004), United States v. Booker, 543 U.S. 220 (2005), and Apprendi v. New Jersey, 530 U.S. 466 (2000); (3) trial counsel was ineffective for not objecting to the fact that Petitioner did not receive credit for two months in city jail; and (4) trial counsel was ineffective for not arguing and objecting to the grouping on the criminal history, and asserting that it was overstated.

_____

[1] Case No. 1:03CR50 (N.D. Ohio) (Matia, J.)

District Judge Paul R. Matia denied Johnson's motion as to the second, third, and fourth grounds for relief and referred the first ground for relief to Magistrate Judge Baughman for an evidentiary hearing to determine "[w]hether or not [Johnson] actually requested that his attorney file a notice of appeal."  Johnson v. United States, 2005 U.S. Dist. LEXIS 13002, *4 (N.D. Ohio 2005). On May 27, 2005, the Magistrate Judge held an evidentiary hearing, at which the following three witnesses testified: (1) Johnson; (2) Johnson's mother, Regina Maria Bolden; and (3) Johnson's appointed defense counsel at sentencing, David Grant ("Grant").

Grant was the second court-appointed attorney assigned to represent Johnson.  Johnson testified at the May 27, 2005 evidentiary hearing that he had requested that the court replace his first court-appointed attorney because he felt that the attorney "wasn't working in [his] best interests." (Doc. 27 at 7).  After the court appointed Grant to the case, Grant negotiated a plea agreement on behalf of Johnson that included less time in prison than previously contemplated and permitted Johnson to retain his rights to appeal the terms of his sentence.  Johnson testified at the evidentiary hearing that the reason he wanted to retain his appeal rights was because he believed that the probation office had incorrectly determined that his criminal history category was a category IV rather than a category III.

Prior to the sentencing hearing, Johnson and Grant met on several occasions and discussed, among other things, Johnson's desire to pursue the disputed issue regarding his criminal history category.  During one of these pre-sentence meetings, Grant informed Johnson that he believed that the criminal history issue was not a good argument for appeal, but that they might fare better in front of Judge Matia at sentencing.  At the sentencing hearing on January 26, 2004, Grant did in fact argue that the court should determine Johnson's criminal history classification to be a category III and not

3

a category IV.  Judge Matia, however, rejected that position and determined that the probation office had properly classified Johnson's criminal history as a category IV.  As such, Johnson's applicable sentencing guideline range was fifty-seven to seventy-one months rather than forty-six to fifty-seven months.  Ultimately, Judge Matia sentenced Johnson to sixty months in prison with three years of supervised release.  The Judge then informed Johnson that he may have the right to appeal either the conviction or the sentence, that he could receive appointed counsel for an appeal without cost, and that he had the right to have notice of appeal timely filed on his behalf.

Grant and Johnson disagree significantly as to what happened in the courtroom immediately following the sentencing hearing.  Grant testified at the May 27, 2005 evidentiary hearing that he and Johnson did not talk at all following the sentencing hearing.  Johnson, however, testified that they had the following conversation:

> We didn't get to the agreement we thought we could get, but he told me that the next step was to appeal those issues, and that I said because I guess my mother kept in contact as far as the procedure it would take in order to pursue my indifference [sic] over my sentence.

(Doc. 27 at 20).  Grant and Johnson's testimony also conflicts as to whether Johnson ever directed Grant to file an appeal on his behalf.  Grant testified that Johnson never requested that he file an appeal.  Johnson, on the other hand, maintained that he instructed Grant to file an appeal, but Johnson was unable to point to any specific instance where he expressly instructed Grant to do so.

Also at the evidentiary hearing, Johnson testified that he had asked his mother, Regina Maria Bolden, to serve as an intermediary between him and Grant following the sentencing hearing.  Additionally, he testified that he was aware that he had only ten days following the sentencing hearing to file an appeal.  According to the affidavit of Ms. Bolden, however, her son did not actually

4

ask her to contact Grant concerning an appeal until July 2004, over four months after the sentencing hearing and well after the ten-day period to file a notice of appeal had passed.   Johnson did not personally contact Grant following the sentencing hearing until at least a month after the expiration of the ten-day appeal period.

Following the May 27, 2005 evidentiary hearing, both Respondent and Petitioner filed proposed findings of fact and conclusions of law for the Magistrate's consideration (Docs. 30 & 32). On January 26, 2006, the Magistrate Judge issued his R&R recommending that this Court vacate Johnson's sentence and re-sentence him so that he may proceed with an appeal.  Respondent timely objected to the R&R on February 6, 2006, and Petitioner filed a response to the Respondent's objection on February 17, 2006.

## II. DISCUSSION

### A. Standard of Review

A prisoner who moves to vacate his sentence pursuant to § 2255 must demonstrate  that the imposition of his sentence violates the Constitution or laws of the United States, that the court did not have jurisdiction to impose the sentence, that the sentence was excessive under the law, or that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255.  Under § 2255, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict."  Griffin v. United States, 330 F.3d 733, 736 (6th Cir. 2003) (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).  "Relief is warranted only where a petitioner has shown 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  Griffin, 330 F.3d at 736 (quoting Davis v. United States, 417 U.S. 333, 346 (1974)).

For a petitioner to obtain collateral relief under § 2255, he must clear a significantly higher hurdle than would exist on direct appeal. United States v. Frady, 456 U.S. 152 (1982). A petitioner may not raise any claims in a § 2255 motion, even those of constitutional magnitude, if he did not make a contemporaneous objection or present the claim on direct appeal. Frady, 456 U.S. at 167-68; Nagi v. United States, 90 F.3d 130, 134 (6th Cir. 1996). If a petitioner procedurally defaulted a claim by failing to raise it on direct appeal, he may only raise it under § 2255 if he first demonstrates either cause for the default and actual prejudice, or that he is actually innocent. Bousley v. United States, 523 U.S. 614, 622 (1998).

For claims of ineffective assistance of counsel, however, the procedural default rule does not apply. Ineffective assistance of trial counsel claims are generally not reviewable on direct appeal, because the record may be inadequate to permit review. See United States v. Kincaide, 145 F.3d 771, 785 (6th Cir. 1998); United States v. Tucker, 90 F.3d 1135, 1143 (6th Cir. 1996). Thus, a petitioner may raise an ineffective assistance of counsel claim for the first time in a § 2255 proceeding, despite the petitioner's failure to raise the claim on direct appeal. See Tucker, 90 F.3d at 1143; United States v. Allison, 59 F.3d 43, 47 (6th Cir. 1995).

**B. Law & Analysis**

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-prong test for analyzing claims of ineffective assistance of counsel. First, the petitioner must show that trial counsel's performance was not within the range of competence demanded of attorneys in criminal cases. *Id.* at 687. Second, the petitioner must show that actual prejudice resulted from the counsel's deficient performance. *Id.* A court, however, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

6

Johnson contends that Grant rendered ineffective assistance by failing to file an appeal.  In the context of an attorney's alleged failure to file an appeal on behalf of a criminal defendant, the Supreme Court has indicated that the Strickland two-prong analysis applies.  Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000).  A reviewing court, however, should be highly deferential to counsel's performance.  *Id.* at 477 (citing Strickland, 466 U.S. at 689).  If a criminal defendant specifically instructs his attorney to file an appeal, and the attorney fails to do so, the attorney acts in a manner that is professionally unreasonable.  Flores-Ortega, 528 U.S. at 477 (citing Rodriguez v. United States, 395 U.S. 327 (1969)).  On the other hand, if a defendant instructs his attorney not to file an appeal, he cannot later complain that his attorney did not perform effectively.  Flores-Ortega at 477.

If the defendant has not specifically instructed his attorney to file an appeal, however, the court must then determine whether the attorney "consulted" with the defendant about an appeal.  *Id.* at 478.  Consultation occurs in this context when an attorney advises his client of the advantages and disadvantages of bringing an appeal and makes a reasonable effort to determine the client's wishes. *Id.* at 478; see also Regaldo v. United States, 334 F.3d 520, 525 (6th Cir. 2003).  If the attorney has consulted with his client regarding an appeal, then his conduct is ineffective only if he fails to follow his client's *express* instructions.  Regaldo, 334 F. 3d at 524.

If the attorney failed to consult with his client, the lack of consultation is unreasonable only where (1) a rational defendant would want to appeal, or (2) the particular defendant reasonably demonstrated to his attorney his interest in appealing.  Flores-Ortega, 528 U.S. at 480; see also Granger v. Hurt, 2007 U.S. App. LEXIS 2967, *19 (6th Cir. Feb. 8, 2007).  If the attorney failed to consult under those circumstances, the court would then consider the actual prejudice prong of the Strickland test and determine whether the defendant can demonstrate that "there is a reasonable

7

probability that, but for the counsel's deficient failure to consult with him about an appeal, he would have timely appealed."  Flores-Ortega at 484.

**1. Deficient Performance**

In the instant case, the Court must first determine whether Johnson *expressly* instructed Grant to file an appeal, and if so, whether Grant ignored Johnson's instruction. If the Court finds that Johnson did not expressly instruct Grant to appeal, then the Court must address whether Grant "consulted" with Johnson regarding an appeal.

Grant's testimony at the May 27, 2005 evidentiary hearing was both clear and consistent that at no point did Johnson or any member of Johnson's family ever expressly instruct him to file an appeal.  On the other hand, Johnson's testimony as to whether he ever expressly instructed Grant to file an appeal was contradictory and inconsistent.  The following exchange between Assistant U.S. Attorney Phillip Tripi and Johnson (referred to as "The Witness") serves as one example of the inconsistencies prevalent throughout Johnson's testimony:

> MR. TRIPI:      All right.  And you are now claiming that you were upset that your attorney didn't file something for you?
>
> THE WITNESS:    That's correct.
>
> MR. TRIPI:      All right.  And did you ever direct him to file or did you just discuss the possibility of an appeal?
>
> MR. TEREZ:      I'll object to that, Your Honor.  Asked and answered.
>
> THE COURT:      Overruled.
>
> THE WITNESS:    Can you repeat the question one more time?
>
> (Record read.)
>
> THE WITNESS:    No, we didn't discuss it.  It wasn't up for discussion from the

8

> beginning.  I told him that I wasn't happy with my sentence.  It wasn't a matter of discussion.  I asked him to continue to work on my case, continue to take the next step.  I understood what [the Judge] told me was to file an appeal.

MR. TRIPI:         Did you direct him at that time to file an appeal?

THE WITNESS:    That is correct.

MR. TRIPI:         You actually told him at the date of your sentencing that you wanted an appeal filed?

THE WITNESS:    The exact words I can't, you know, recall, but the moral to the story was that my next step was to file an appeal on my criminal history, and that's what I wanted done.

(Doc. 27 at 32-33).  Johnson also contends that immediately following the sentencing hearing, Grant told him that "the next step was to appeal." (*Id.* at 20).  Grant, however, denies that this conversation ever occurred.

Even if the Court accepts Johnson's account as true, an attorney informing his client that the next step in the legal process is to appeal does not constitute an express instruction *by the client* to appeal.  Johnson's statement reflects nothing more than his own unexpressed desire to file an appeal which, if it remains unexpressed, clearly cannot constitute an instruction to appeal.  In fact, Johnson could not credibly point to any specific instance where he *expressly* instructed Grant to file an appeal on his behalf.  As such, this Court finds that Johnson did not expressly instruct Grant to file an appeal.

Johnson also testified that he asked his mother, Regina Maria Bolden, to serve as an intermediary between him and Grant after the sentencing hearing, and that Ms. Bolden instructed Grant to file an appeal on Johnson's behalf.  Ms. Bolden stated in her affidavit, however, that Johnson did not actually ask her to contact Grant concerning an appeal until July 2004, long past the

9

January 2004 sentencing hearing.  Under Fed. Rule App. P. 4(b), a defendant has ten days in which to file a notice of appeal to the district court.  Johnson testified at the evidentiary hearing that he was aware of the ten-day filing period.  Based on the affidavit of Ms. Bolden, therefore, any request she made to Grant to file an appeal on her son's behalf was long past the ten-day period to file a notice of appeal had expired.

Having determined that Johnson did not expressly instruct Grant to file an appeal, either personally or through his mother, the Court must next determine whether Grant consulted with Johnson regarding an appeal.  The testimony of both Grant and Johnson at the May 27, 2005 evidentiary hearing is in agreement that the two had an amiable attorney-client relationship throughout the plea and sentencing process.  Grant testified that he thought that he had a good relationship with Johnson throughout the proceeding (Doc. 27 at 45); and Johnson testified that he "never had any concerns as far as Mr. Grant directly." (*Id.* at 26).  The testimony is also consistent that Grant met with Johnson in prison on several occasions prior to the sentencing hearing to discuss the legal issues related to Johnson's case.  Specifically, Grant testified that he and Johnson "had numerous discussions about numerous issues leading up to the time of the plea and sentencing" (*Id.* at 45); and  Johnson testified that Grant "was pretty good about coming to visit [him]." (*Id.* at 10).[2]

Grant further testified that, prior to the sentencing hearing, he discussed the criminal history issue with Johnson and advised him that it would not be a good issue for appeal.  Below is the relevant exchange between Assistant U.S. Attorney Phillip Tripi and Grant (referred to as "The

---

[2]  To the extent that the policy behind requiring counsel to consult with a client about filing an appeal is to ensure that counsel does not neglect his client, or to ensure that the client has an opportunity to express his desire to appeal, Grant's actions clearly have satisfied those policy goals in this case.

Witness") at the evidentiary hearing:

> MR. TRIPI: As part of your discussions with your client, did you ever discuss the concept [on] that some of these issues you might fare better before the sentencing judge and may not be appealable issues?
>
> THE WITNESS: We discussed issues that were going to be raised that perhaps were not good issues for appeal, but we might be able to convince Judge Matia to go our way, yes.
>
> MR. TRIPI: And those included the issue about his criminal history?
>
> THE WITNESS: That was primarily – that issue was primarily the issue with regard to criminal history. Yes.

(Doc. 27 at 47).

Furthermore, Johnson's own testimony makes clear that he was fully aware of both his own appeal rights and the ten-day period he had to file a notice of appeal following the sentencing hearing. In fact, Johnson testified that he had previously considered taking the case to trial just to ensure that he did not give up his right to appeal by pleading guilty, and he made sure that the plea agreement that Grant eventually negotiated on his behalf did not waive his appeal rights. Additionally, Judge Matia explained Johnson's appeal rights to him on the record at the end of the sentencing hearing, including his right to have a notice of appeal filed on his behalf.

Without question, the better practice here would have been for Grant to meet with Johnson following the sentencing hearing, discuss the advantages and disadvantages of appealing, and explicitly ask him whether or not he wanted to appeal his sentence. The "consultation" test as clarified by the Supreme Court in Flores-Ortega, however, only requires that counsel advise a defendant of the pros and cons of taking an appeal, and make a "reasonable effort to discover the defendant's wishes." Flores-Ortega, 528 U.S. at 478. "[T]he performance inquiry must be whether

11

counsel's assistance was reasonable considering all the circumstances." *Id.* (quoting <u>Strickland,</u> 466 U.S. at 688).  Here, Grant met with Johnson to discuss the legal issues of his case on several occasions prior to the sentencing hearing, and he explained to Johnson that he did not believe the criminal history issue would be successful on appeal.  The record is clear that Johnson was aware of his rights, understood the consequences of not exercising those rights, had plenty of opportunity to expressly instruct Grant to file an appeal, but did not do so in a timely fashion  Under the circumstances of this case, the Court finds that "consultation" has occurred.

The Magistrate Judge based his conclusion that Grant rendered ineffective assistance of counsel on his determination that Grant "knew or should have known" that Johnson had "reasonably demonstrated to counsel that he was interested in appealing." (Doc. 37 at 13).  Even if Grant should have known that Johnson was interested in considering an appeal, such that Grant had a "constitutionally-imposed duty to consult," <u>Flores-Ortega</u>, at 480, Grant discharged that duty when he did, in fact, consult and counseled against an appeal.  During the numerous meetings at which Grant and Johnson discussed these issues, Johnson had ample opportunity to expressly request that Grant file an appeal if their arguments at sentencing should fail.

In the circumstances of this case, where the defendant and his counsel had several meetings and discussed the very issues that the defendant claims he wanted to appeal, and even the possibility of appealing them, and where the defendant is fully aware of his appeal rights and ten-day timeframe to file a notice of appeal, but he does not expressly instruct his counsel to file an appeal, the Court cannot find that counsel's performance was constitutionally deficient.

As the Court finds that Johnson did not expressly instruct Grant to file an appeal on his

behalf, and that Grant consulted with Johnson regarding the possibility of filing an appeal, the Court concludes that Grant's representation of Johnson was not outside "the range of competence demanded of attorneys in criminal cases." Strickland, 466 U.S. at 687.  As such, Johnson fails to satisfy the first prong of the Strickland test.

### 2. Prejudice

Alternatively, if Johnson could satisfy the first prong of the Strickland test by establishing that Grant performed deficiently, he would nonetheless fail to show prejudice from Grant's deficient performance.  Under the second prong of the Strickland test, Johnson would need to demonstrate that "there is a reasonable probability that, but for the counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Flores-Ortega at 484.  In examining whether a client would have timely appealed, "evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." *Id.* at 485.

With regard to whether there were nonfrivolous grounds for appeal, Grant primarily made two arguments on Johnson's behalf in his *Objections and Responses to Pre-Sentence Investigation Report and Motion for Downward Departure* (Case No. 1:03CR50, Doc. 148, N.D. Ohio, Jan. 9, 2003) and at the January 26, 2004 sentencing hearing: (1) that the court should consider Johnson's two 1991 Ohio convictions as "related" for the purposes of sentencing, putting him in a criminal history category III instead of category IV; and (2) that, if the court did not consider the two convictions as related, the court should depart downward from a criminal history category IV to category III, because a category IV overrepresents the seriousness of Johnson's criminal history.

13

As to the first argument, Grant contended that, because the sentence for the second conviction ran concurrently with the sentence for the first conviction, the two convictions were consolidated for sentencing and should therefore be considered as related sentences.  Regardless of whether a court consolidates separate convictions for the purposes of sentencing, however, "prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)."  U.S. Sentencing Guidelines Manual § 4A1.2, comment. (n.3).  In this case, Johnson's prior offenses were separated by an intervening arrest, making it clear that they could not be considered related for purposes of sentencing.[3]

As to the second argument, Grant argued that the court should depart downward from a criminal history category IV to category III pursuant to U.S.S.G. § 41A1.3, arguing that a category IV overrepresents the seriousness of Johnson's criminal history.  The Sixth Circuit recently reiterated that a district court's refusal to depart downward is not appealable, save the "sole exception" where the district court is not aware or did not understand the discretion to make such a departure.  United States v. Gale, 468 F.3d 929, 937 (6th Cir. 2006) ("[W]e do not have authority to review the district

---

[3]  To escape this clear application of the Sentencing Guidelines comment, Grant cited two cases standing for the proposition that, because the "intervening arrest" rule did come into effect until 1991, the Ex Post Facto Clause bars application of that rule when an offense that is the *subject of the sentencing* is committed prior to the effective date of the 1991 amendment.  See United States v. Rivers, 50 F.3d 1126 (2d Cir. 1995); United States v. Lindholm, 24 F.3d 1078 (9th Cir. 1994).  In Johnson's case, the offenses that were considered for Johnson's criminal history occurred prior to effective date of the 1991 amendment, but the offenses for which Johnson was being sentenced occurred well after 1991.  Thus, there is clearly no Ex Post Facto problem in this case.  See United States v. Williams, 83 Fed. Appx. 514, 516 (4th Cir. 2003) (finding that the relevant offense for an ex post facto analysis is the instant offense of conviction, not prior offenses).

14

court's decision not to depart downward.) (quotations omitted); see also Watkins v. United States, 156 F.3d 1234 (Table), 1998 WL 476230 at *3 (6th Cir. 1998) ( "[T]he failure to depart downward is not appealable unless the trial court incorrectly believed that it lacked the discretion to do so."). This principle applies equally in cases where, as here, a defendant argues that a downward departure is appropriate because his criminal history has been overstated. See United States v. Ridge, 329 F.3d 535, 543-44 (6th Cir. 2003) (applying this principle where a defendant argued for a downward departure based on U.S.S.G. § 4A1.3). In this case, the record clearly indicates that Judge Matia was aware of and understood his discretion to depart downward to a criminal history category III. Although Judge Matia admitted that it was a close decision, he ultimately declined to grant a downward departure:

> All right. I've reviewed your motion and I've looked at the criminal history over and over again and, admittedly, he's probably close to the border, but I don't think that IV can really be said to overrepresent his criminal history and, therefore, I decline to depart downward based upon overrepresentation of criminal history. That leaves the total offense level at 21 and the Criminal History Category at IV.

(Doc. 15-3 at 13).

Johnson, at best, faced a steep uphill battle on appeal. In such circumstances, the Court does not find substantial evidence that there was a reasonable probability that Johnson would have appealed but for counsel's hypothetical deficient failure to consult.

As to evidence that the defendant in question promptly expressed a desire to appeal, Johnson must adduce evidence showing that "there was a reasonable probability that he would have appealed had [Grant] consulted with him about a possible appeal . . . ." United States v. Lovell, 83 Fed. Appx. 754, 759 (6th Cir. 2003). The Supreme Court made clear in Flores-Ortega that the mere expression

15

of an "interest" in appealing cannot by itself satisfy the prejudice component.  <u>Flores-Ortega</u>, 528 U.S. at 486.  In this case, Johnson did not personally contact Grant until at least a month after his sentencing hearing, long after the ten day period in which to file a notice of appeal had passed. Furthermore, Johnson's mother provided in her affidavit that her son did not ask her to contact Grant about an appeal until over four months after the sentencing hearing.  On the other hand, Johnson also maintained his right to appeal the sentence in the negotiated plea agreement, which indicates an interest in appealing.  Merely expressing an interest in appealing, however, is not sufficient to show prejudice from counsel's deficiency.  <i>Id.</i> at 486.  Considering the record as a whole, Johnson simply did not offer sufficient evidence that he demonstrated a reasonable probability that he would have appealed.

Accordingly, the Court concludes that, even if Johnson could satisfy the first prong of the <u>Strickland</u> test, he could not show prejudice from Grant's performance.  As such, Johnson fails the second prong of the <u>Strickland</u> test.

## III. CONCLUSION

For the reasons stated above, the Plaintiff's motion to vacate, set aside, or correct sentence filed pursuant to 28 U.S.C. § 2255 (Doc. 1) is **DENIED.**

**IT IS SO ORDERED.**

s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY
UNITED STATES DISTRICT JUDGE**

**Dated: July 16, 2007**

16